THE NATIONAL CITY BANK OF NEW YORK, demandante y apelada, *v.* J. MARTÍNEZ LLONÍN, demandado y apelante.

No. 4824.—*Sometido:* Diciembre 20, 1929. *Resuelto:* Junio 20, 1930.

*H. Torres Solá* y *Manuel Tous Soto,* abogado del apelante; *Hartzell, Kelley & Hartzell* y *R. O. Fernández,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

De la demanda enmendada en el presente caso, aparecen alegados los siguientes hechos:

Que los demandados J. Martínez Llonín, Rafael Vázquez, y Julio R. Bruno, y Bruno y Vázquez, en 27 de abril de 1923 suscribieron mancomunada y solidariamente, y entre-

garon a la demandante, un pagaré por siete mil setecientos treinta dólares y 75 centavos, por valor recibido, con intereses al 9 por ciento anual, y a dos meses plazo; y que el pagaré se encuentra en poder del banco demandante, al que se le han satisfecho solamente $999.40, en agosto de 1923; que la obligación está vencida, y los deudores han sido requeridos de pago, y no han pagado al demandante en todo, ni en parte, los $6,731.35 que importa ahora el pagaré. Se acompañó el documento, que aparece suscrito mancomunada y solidariamente por J. Martínez Llonín, Julio R. Bruno, Rafael Vázquez y Bruno & Vázquez.

En la contestación a la demanda por parte de José Martínez Llonín, éste admite que suscribió con los demandados Vázquez Bruno, y Bruno y Vázquez, el pagaré a dos meses plazo que se acompaña a la demanda, y niega que su libramiento y entrega fueran por valor recibido, o por consideración beneficiosa al demandado que comparece; admite que se han pagado $999.40, y alega que los pagó D. Antonio Ribot. Y como materia nueva alega que en 27 de abril de 1923, la sociedad Bruno y Vázquez tenía pendientes de pago con el demandante varias obligaciones: pagaré por $2,731.35, garantizado por Rafael Vázquez, Julio R. Bruno, y F. Benítez Rexach; otro por $1,300, garantizado por Julio R. Bruno, Rafael Vázquez, y Amalia C. viuda de Blondet; otro de $3,000, garantizado por Julio R. Bruno, y Emma Blondet viuda de Mantilla, y otro por $999.40, garantizado por Antonio Ribot; todos por razón de préstamos hechos por el National City Bank of New York a Bruno y Vázquez; que el 27 de abril de 1923, Bruno y Vázquez solicitó del banco una prórroga para el pago de esas obligaciones; que se la concedió con la condición de constituir garantía adicional, la cual convino en constituir José Martínez Llonín, que se personó en el banco y dijo al gerente que venía a suscribir la garantía, y el gerente llenó los espacios en blanco de un documento impreso en inglés, idioma que el contestante desconoce, y que éste firmó el documento, en la inteligencia de

que se constituía en garantizador de las obligaciones de Bruno y Vázquez para el caso de que los fiadores que en ella aparecían no cumplieran; que el Sr. Ribot pagó al demandante $999.40, importe del pagaré en que aparecía su firma; que el National City Bank of New York no ha requerido de pago a los fiadores en los expresados documentos, ni ha hecho excusión de sus bienes. Y formuló contrademanda, en la que alega los mismos hechos de su defensa especial, y que el documento que suscribió resultó ser el pagaré por $7,730.75, del que aparecen como deudores solidarios por valor recibido, Rafael Vázquez, Julio R. Bruno, Bruno y Vázquez, y el contrademandante, quien nunca recibió suma alguna, ni se constituyó en fiador solidario, o codeudor en dicha obligación, habiéndolo así reconocido el banco contrademandado; que ese documento no contiene la verdadera estipulación entre el banco, Bruno y Vázquez, Rafael Vázquez, Julio R. Bruno, y el contrademandante, como lo entiende el banco.

Oído el caso, y en él la prueba que presentaron las partes, la corte dictó sentencia condenando al demandado a pagar al demandante $6,731.35, con los intereses al 9 por ciento, y costas y honorarios de abogado; y enmendando la misma, por razón de haberse ya dictado otra contra Julio R. Bruno, Rafael Vázquez, y Bruno y Vázquez, declaró que se condenaba a José Martínez Llonín al referido pago. Aparece que en el caso existía una sentencia como la que se indica, en rebeldía.

Apela el demandado Martínez Llonín; y señala la comisión de cinco errores.

El primer señalamiento se formula así:

"Primero.—Interpretación indebida del contrato otorgado entre el National City Bank of New York y el Sr. José Martínez Llonín, que originó el libramiento del pagaré objeto de la demanda del primero de ellos, comprendiendo en la contratación obligaciones diferentes de las que se impuso el segundo."

Se argumenta a propósito de este señalamiento, sobre los

preceptos del Código. Civil que rigen la interpretación de los contratos.

Hemos leído la prueba. Nos encontramos ante un documento en que se contiene una obligación de pagar, contraída mancomunada y solidariamente por Rafael Vázquez, Julio R. Bruno, y Bruno y Vázquez, y J. Martínez Llonín. La lectura de la declaración del gerente del banco demandante, Sr. Clark, no es para producir la impresión, ni extraer las deducciones, que por el apelante se hacen aparecer en su alegato. La explicación que él da a los hechos, es sencilla y lógica. Bruno y Vázquez tienen pendiente con el banco diversas obligaciones, fiados en una por Amalia C. viuda de Blondet, en otra por A. Ribot, en otra por Emma B. viuda de Mantilla, y en otra por F. Benítez Rexach; esas obligaciones han vencido, y han vencido las prórrogas; en esos momentos J. Martínez Llonín, viene al banco, para ofrecer solución mediante su garantía; y el banco, tratando con sus deudores y J. Martínez Llonín, ofrece aceptar la garantía de éste, siempre que se haga un nuevo documento, suscrito por él, con Bruno y Vázquez, Julio R. Bruno, y Rafael Vázquez, conservando el banco los antiguos documentos, y ofreciendo que en el caso de que éstos sean pagados, hará el abono al documento nuevo, y devolverá el antiguo a quien lo pagó. Este es, a nuestro juicio, el contrato aceptado, según resulta de la prueba. Y en consecuencia de ese convenio, suscribió el apelante el pagaré de que se trata, y de cuyo texto aparece como deudor solidario.

Desde luego, no hemos de dar estudio a la alegación de que el apelante desconocía el documento que firmaba, por estar escrito en inglés. Esto se alegó en un principio, pero no se hace fuerza en ello ahora. Ningún hombre de negocios, en Puerto Rico, puede hacer válidamente esa alegación.

Del alegato del apelante, copiamos:

"La contratación en cuestión culminó en el libramiento de un pagaré por valor recibido quedando obligados mancomunada y soli-

dariamente, los firmantes del mismo, a pagar un montante en determinado día.''

Y habla después de que la declaración del gerente del banco hace patente la contradicción entre las palabras y la intención de los contratantes. No vemos la contradicción; nos parece que no la vemos, porque no la hay.

No estamos en el caso de acudir a reglas de interpretación de contratos. Ellas se aplican cuando surge una duda, ya de las palabras, ya de los actos de los contratantes. Pero aquí, ni aun la reconocida habilidad argumentativa del abogado del apelante puede hacer surgir esa duda. Hubo una transacción clara y precisa, como la proponía el Sr. Clark, y el apelante, conforme con ella, suscribió el documento.

Parece que la teoría del apelante se encuentra en el final de su argumentación de este señalamiento de error. Dice:

''El demandado, fiel a la palabra empeñada, respetuoso en sus deberes y obligaciones, no niega sus obligaciones, no trata de evadir los efectos de ellas, y por este motivo se limita a la alegación de ser fiador de los firmantes de las obligaciones anteriores a la suya, dispuesto a cumplir sus deberes de fiador cuando su cumplimiento proceda.''

No podemos aceptar esta teoría, que no se conforma con los hechos, ni con el derecho. No negamos que se pueda contraer una obligación de fianza con posterioridad a la contracción de la principal. Es esto posible, aunque no probable. Regularmente la fianza es contemporánea de la obligación principal. En este caso, para admitir que se trata de una fianza, tendríamos que empezar por prescindir del texto explícito del documento, que es el de un préstamo, con deudores mancomunados y solidarios; y es mucho prescindir, cuando se trata de hombres de negocio, que saben lo que firman, y a lo que se obligan.

Veamos cómo podría esta obligación ser una de fianza con respecto a los firmantes de los anteriores pagarés.

El documento es contrario a la proposición que exami-

namos. Nada se dice en él con respecto a esos pagarés anteriores, y a esas obligaciones.

La prueba testifical, ni aun interpretada por la parte apelante, llevando al extremo, no las afirmaciones de los testigos, sino las deducciones de la defensa, puede en caso alguno mostrar la relación entre fiador y fiado, como surgida entre Martínez Llonín y F. Benítez Rexach, Amalia C. viuda de Blondet, y los demás que en aquellos decumentos aparecen como deudores solidarios. Del contrato de fianza, plurilateral por su naturaleza, nacen relaciones diversas e independientes: las del fiador y el fiado entre sí; las de los cofiadores entre ellos; las del fiador y el acreedor en la obligación principal. Y esas relaciones son de derechos y obligaciones y no se engendran más que por el consentimiento de las partes, fuente espiritual del contrato. Nos preguntamos dónde está el consentimiento de los que aparecen en las precedentes obligaciones, y dónde el del banco, constante y firmemente negado por el testigo Clark.

El artículo 1728 de nuestro Código Civil empieza así:

"La fianza no se presume: debe ser expresa y no puede extenderse a más de lo contenido en ella."

Superfluo citar jurisprudencia acerca de precepto tan claro, y que tiene su raíz en la legislación histórica en esta jurisdicción.

Comentando el artículo 1827 del Código Civil Español, igual al 1728 de nuestro Código Civil, dice Manresa:

"En efecto, aunque la fianza es una obligación accesoria de la principal, no por eso deja de ser una obligación especial distinta de la del deudor, que presupone y requiere, por lo tanto, en quien la contrae la intención de quedar obligado a cumplir en defecto del fiado lo que éste estaba en el deber de hacer; y hasta tal punto es indispensable dicho requisito que, faltando la voluntad del fiador, falta el consentimiento, que es lo único que puede dar vida al vínculo jurídico propio de la fianza."

Y luego:

". . . lo que la ley ha querido disponer es que la fianza debe ser

constituída expresamente constando de una manera directa o indudable la intención y la voluntad de obligarse. . .''

Véase Manresa, Código Civil Español, páginas 233 y 234, tomo 12, edición tercera.

En la jurisprudencia española encontramos la sentencia del Tribunal Supremo de 16 de noviembre de 1900, pleito seguido entre Don Santiago Cante y Don José Ibarra, en donde se dijo que es principio de derecho, sancionado expresamente por el artículo 1827 del Código Civil, que la fianza no se presume sino que ha de ser expresa.

En las condiciones en que están esos documentos, sería curioso investigar cómo se había de hacer efectiva la obligación que se quiere ahora atribuir a Martínez Llonín como supuesto fiador.

Pero, de todas formas, Martínez Llonín, fuera o no fiador, aparece firmando el pagaré de que se trata, mancomunada y solidariamente.

De que hay causa contractual, no nos queda duda. La causa contractual no es siempre cuestión de dinero, de ganancia o de beneficio material. El artículo 1241 de nuestro Código Civil, quizá un poco didáctico para ser un precepto de ley, dice:

''En los contratos onerosos se entiende por causa, para cada parte contratante, la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del bienhechor.''

La causa es de la esencia del contrato; oneroso éste, onerosa la causa, prestación, servicio, promesa: remuneratorio, el servicio o beneficio que se compensa con la remuneración: de pura beneficencia, la liberalidad por causa. Y creemos que es interesante pensar en el carácter de la fianza, tabla de salvación de muchos contratos, para investigar la existencia de causa en muchos casos.

En el caso *Cintrón & Aboy* v. *Solá*, 22 D.P.R. 262, se dijo:

"... No importa que Celestino Solá dejara de beneficiarse del préstamo; él convino en ser deudor solidario para servir a Solá e Hijo, y ese convenio quedó consignado en el pagaré al ser firmado éste por el demandado como deudor solidario. La ley del contrato quedó establecida en el documento como última expresión de la voluntad de las partes, y a ella tiene que someterse Celestino Solá."

En *Crédito y Ahorro Ponceño* v. *Beiró,* 32 D.P.R. 817, la doctrina jurídica base de la resolución es que el deudor que conviene en suscribir y suscribe una obligación con carácter de codeudor solidario, no puede eludir tal responsabilidad con alegación y prueba de que fué otro codeudor que se benefició con el dinero del préstamo.

Declaramos que no existe el error señalado bajo el número primero.

En el segundo señalamiento de error, la parte apelante sostiene que la corte apreció mal la teoría de la novación, declarando extinguidos los pagarés anteriores al que es objeto de esta reclamación, siendo así que tal novación no se ha declarado por las partes, y que no son incompatibles la nueva y las antiguas obligaciones.

Hemos leído cuidadosamente la opinión de la corte inferior, y la sentencia en el caso. No encontramos en una o en otra nada que haga referencia a la novación, ni que con ella y sus teorías se roce.

No hay razón alguna para que este tribunal estudie y resuelva acerca de un extremo que ni por la letra, ni por el espíritu de la opinión y de la sentencia pueda decirse que han sido parte o motivo de ella. El tribunal tiene el poder de examinar todo el caso, hasta en sus más pequeños detalles; pero ese poder ha de ejercitarse, o bien por un motivo que el tribunal encuentre razonable, o porque alguna de las partes llama su atención, con una razón fundada, hacia ese extremo.

No vemos en qué tenga la teoría de la novación influencia alguna en la decisión de este caso. La corte inferior dió crédito a la declaración del testigo Clark en cuanto a cómo

se llevó a cabo la negociación de que se trata; y ése fué el más fuerte fundamento de su sentencia. Pero no vemos que directa ni indirectamente trate de la novación.

■ El tercer señalamiento de error se funda en que el juez sentenciador hizo indebida aplicación de la teoría de este tribunal en los casos de *Cintrón y Aboy* v. *Solá,* y *Rovira* v. *Vidal,* así como del principio de derecho de que nadie puede ir contra sus propios actos, y del artículo 101 de la Ley de Evidencia.

Sostiene la parte que el apelante no tuvo intervención alguna en los cuatro pagarés librados con anterioridad al que se le cobra, y que a virtud de su acto nadie recibió dinero o bienes del National City Bank.

Ello no obsta para que el contrato que el apelante sus-cribió tuviera causa, si no la de recibir él dinero o bienes, o recibirlo los que con él firmaron, la de que éstos recibieran el beneficio de un crédito que les permitiera por el momento solucionar su situación. Repetimos lo antes dicho con rela-ción a la causa contractual y sus diversas clases. Y a la jurisprudencia citada, adicionamos, tomándola del apelado, la de los casos *Bennett* v. *Boschetti,* 31 D.P.R. 855; *Banco Comercial* v. *Arguinzonis,* 35 D.P.R. 284; y *Roig Commercial Bank* v. *Valladares,* 38 D.P.R. 439. En el primero se dijo:

"El demandado está en la idea errónea de que porque él no re-cibía ningún beneficio no había causa alguna para el contrato, pero como indica la apelada cualquier detrimento para la parte contraria es una causa por valor. Cód. Civil, artículo 1241, 13 C. J. 311."

En *Roig Commercial Bank* v. *Valladares,* se dijo:

"La única defensa substancial, de podérsele llamar así, era que la demandada principal no recibió beneficio alguno del préstamo y nunca autorizó a su esposo como apoderado suyo a otorgar tal pagaré. La corte inferior contestó suficientemente esta contención citando el caso de *Banco Comercial* v. *Arguinzonis,* 35 D.P.R. 284."

No hay relación entre este caso y el de *González* v. *Fu-mero,* 38 D.P.R. 556. En éste se trató del ejercicio de una

acción de nulidad de contrato. En el presente no vemos por dónde puede surgir la alegación de nulidad, cuando el demandado, entre las teorías que sostiene, presenta la de que él era un fiador, con el derecho de excusión, etc.

Aparece del récord (páginas 28 a 31 inclusives, T. E.) que el demandado presentó, en el juicio, moción para que se desestimara la demanda, porque el demandante no había probado sus alegaciones, ya que se alegó que él había recibido $7,000 y aparece que no ha recibido nada. El demandante argumentó que el demandado había suscrito el pagaré solidariamente, y que la operación se hizo a su solicitud. La corte denegó la moción, fundada en la jurisprudencia de Puerto Rico en el caso *Cintrón y Aboy* v. *Solá.* La corte dijo lo que sigue:

"La cuestión que se presenta es sencillamente la cuestión de los firmantes solidarios de un pagaré. Este pagaré, firmado por uno de los demandados, dice, 'for value received,' y se da la cantidad. El Tribunal Supremo de Puerto Rico en los casos de *Cintrón & Aboy* v. *Solá,* el de *Rovira* v. *Vivaldi,* y en otros más, ha resuelto que después que una persona firma una obligación solidariamente, está impedida de negar que no ha recibido aquello que manifestó haber recibido en el mismo documento que firmó. Esa misma cuestión, además, me ha sido presentada en otras ocasiones, como juez de esta corte, y la teoría que he aplicado es la de 'estoppel.' Es decir, una persona que firma un pagaré manifestando que ha recibido cierta cantidad de dinero, está 'estopped' de venir a la corte a decir que no ha recibido ningún dinero, a menos que no alegue fraude o alguna otra circunstancia de esta naturaleza. Por esa razón se declara sin lugar la moción presentada por el demandado de que se desestime la demanda."

No estamos muy seguros de que el juez no hablara más de lo necesario, y esto haya dado lugar a la argumentación que ahora se hace. Pero de todas maneras, a la proposición de la moción contestaba sobradamente la jurisprudencia en el caso *Cintrón y Aboy* v. *Solá, supra,* y la del caso *Crédito y Ahorro Ponceño* v. *Beiró et al.,* 32 D.P.R. 817.

En cuanto al *estoppel,* entendemos que el que firma

como deudor solidario un documento mediante el que procede el acreedor en una forma determinada, está en un caso de impedimento para negar.

Estas mismas razones resuelven los señalamientos de error números cuarto y quinto que se refieren a la inexistencia de contrato por falta de causa, y al carácter de controvertible de la presunción de verdad (entre las partes) de la relación de hechos consignada en un documento escrito. Tales errores no existen.

*Debe confirmarse la sentencia apelada.*