CÁMARA DE COMERCIANTES MAYORISTAS DE PUERTO RICO, INC., demandante y recurrida, *v.* MARÍA E. HERNÁNDEZ, demandada y recurrente.

*Número:* RE-93-448     *Resuelto:* 15 de marzo de 1996

*Héctor A. Tosado Arocho*, abogado de la parte recurrente; *Darío Padín Mimoso*, abogado de la parte recurrida.

— O —

Opinión concurrente del Juez Asociado Señor Negrón García.

"No hay hecho jurídico que rebase en importancia al de la muerte. La muerte, el más conmovedor fenómeno *vitae hominis*, remece con violencia atronadora hasta el último inciso del ordenamiento legal, produciendo una verdadera conmoción en el mundo jurídico." R. Ato del Avellanal, *Proyecciones jurídicas de la muerte en diversas ramas del Derecho*, 9 Rev. C. Abo. La Plata 87, 89 (1967).

Coincidimos con el resultado de la sentencia revocatoria. La fianza solidaria prestada por Doña María E. Hernández a favor de Express Supermarket quedó, según los hechos, *extinguida*. La clave para esa adjudicación es recordar que con la muerte termina la personalidad y capacidad jurídicas de toda persona obligarse y, naturalmente, el poder incurrir en deudas. No estamos, pues, ante una cuestión que amerite discutir la aplicación de la figura de la novación por *cambio de deudor.*

# I

El 21 de julio de 1986 Doña María se constituyó en fiadora solidaria de su *esposo*, Don Francisco Hernández Saavedra, para que él, haciendo negocios como Express Supermarket, obtuviera crédito con Plaza Provision Company. Según surge de la solicitud de crédito, ella se obligó a responder por "cualquier deuda u obligación que *Express Supermarket* haya contraído o contraiga en el *futuro* con [Plaza Provision Co.] por cualquier concepto". Solicitud de revisión, Apéndice, pág. 18.

Este negocio *no estaba incorporado*, en consecuencia *carecía de personalidad jurídica*. Por ello, Doña María convino en garantizar *personal y exclusivamente* las deudas que contrajera su esposo, pues, a esos efectos, Don Francisco y Express Supermarket eran una misma persona.(¹) En otras palabras, más allá de su obligación natural dimanante de su condición de miembro de la sociedad legal de gananciales Hernández-Pérez, Doña María afianzó expresamente las deudas de su marido. Se manifiesta así la razón *eminente del vínculo*: su relación afectiva de cónyuge en el ámbito familiar.

Don Francisco falleció el 19 de octubre de 1986. Sin embargo, el negocio continuó operando. Con posterioridad a la liquidación de su herencia, sus herederos(²) *incorporaron* el negocio en junio de 1989 ante el Departamento de Estado como *Express Supermarket, Inc.*

El 9 de agosto de 1991 se presentó una demanda en cobro de dinero contra Doña María en concepto de mercancía vendida a la nueva corporación por Plaza Provision Company *durante los meses de marzo y abril de 1991*. La

---

(¹) En la solicitud de crédito que obra en autos, se identifica como "nombre del cliente o corporación", *Francisco Hernández Saavedra* y como "nombre del negocio", *Express Supermarket*.

(²) Sus hijos Juan Francisco, Carmen I. e Iris Z., de apellidos Hernández Pérez. La liquidación de herencia se efectuó el 26 de abril de 1989 por Escritura Pública Núm. 38 ante el notario Rafael Avilés Cordero.

ilustrada sala sentenciadora (Hon. Edna Abruña Rodríguez, Juez) la declaró con lugar.[3] Doña María acudió ante nos.[4]

## II

El contrato de fianza "obliga [a] uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste". Art. 1721 del Código Civil, 31 L.P.R.A. sec. 4871. Éste no se presume y debe constar de forma expresa. Además, *no se extiende a más de lo contenido en el contrato*. Art. 1726 del Código Civil, 31 L.P.R.A. sec. 4876; *Sucn. Belaval v. Acosta*, 64 D.P.R. 109 (1944); *National City Bank v. Llonín*, 41 D.P.R. 163 (1930).

En cuanto a su extinción, el Código Civil establece que "[l]a obligación del fiador se *extingue* al mismo tiempo que la del deudor, y por las mismas causas que las demás obligaciones". (Énfasis suplido.) Art. 1746 (31 L.P.R.A. sec. 4951). Es unánime la doctrina de que "la razón o causa determinante de que alguien se obligue a pagar una deuda ajena está en la *relación* que media entre el *fiador y el deudor principal*". (Énfasis suplido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 594.

La cuestión no necesita mucha elaboración. Basta concluir que, salvo que se pacte una cláusula al efecto, las obligaciones resultantes de fianza terminan al momento de la muerte del deudor afianzado, ya que ahí *cesa su capacidad de generar obligaciones*. El Art. 25 del Código Civil

---

[3] Concluyó que la "fianza-solidaria no se extinguió por el sólo hecho de haberse incorporado el negocio Express Supermarket". Solicitud de revisión, Apéndice, pág. 6.

[4] Alega:
"Erró el Honorable Tribunal al determinar que el documento de fianza firmado a favor de Express Supermarket por la demandada recurrente era extensiva a Express Supermarket, Inc., y que dicha garantía no se había extinguido luego de haberse incorporado el negocio Express Supermarket." Solicitud de revisión, pág. 6.

dispone que "[l]a personalidad y capacidad jurídica se extinguen por la muerte". 31 L.P.R.A. sec. 82.

## III

Bajo este sucinto esquema doctrinario vemos que la responsabilidad de Doña María se extendió únicamente a las obligaciones inmediatas (y futuras) *que incurrió en vida su esposo Don Francisco, esto es, hasta su muerte*. La fianza alcanzaba sólo las deudas no satisfechas que *existían en ese momento*, atribuibles a *Don Francisco*, las cuales sus hijos, como herederos, venían obligados a satisfacer. Decir que ella es fiadora de las deudas nacidas posteriormente —cinco (5) años después— es desnaturalizar la razón de ser y los términos claros de la fianza; conlleva el absurdo de vincularla *ad perpetuam*.

Recapitulando, con la muerte de Don Francisco cesaron los efectos jurídicos de la fianza solidaria de Doña María. No responde ella por ninguna deuda contraída por Express Supermarket o por *Express Supermarket, Inc.* con *posterioridad* al 18 de octubre de 1986. Desde ese momento cesó la capacidad de Don Francisco —deudor afianzado— de incurrir en deudas. Después de esta fecha, Doña María —fiadora solidaria— no podía quedar obligada. No procede en derecho ni se justifica extender los términos del contrato de fianza a las deudas contraídas por los herederos de Don Francisco, haciendo negocios como Express Supermarket, o por *Express Supermarket, Inc.*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri.

El caso de autos es relativamente sencillo. Entre María Hernández y Plaza Provision Company existía una obligación de garantía, por razón de la fianza solidaria prestada

por aquella a favor del negocio conocido como "Express Supermarket". La cuestión ante nos es si tal obligación subsiste a favor de una nueva persona, como es el Express Supermarket, *Inc.*

Para resolver esta cuestión debe recordarse inicialmente que el contrato de fianza es de carácter *accesorio*. Es decir, la obligación del fiador es accesoria de la principal, a la que garantiza y de la cual depende para su existencia. J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 588. Por ello es que claramente se dispone en el Art. 1746 del Código Civil de Puerto Rico, 31 L.P.R.A. 4951, que: "La obligación del fiador se extingue al mismo tiempo que la del deudor ...."

Aquí la señora María Hernández garantizaba el pago de las deudas que el negocio "Express Supermarket" pudiese tener con Plaza Provision Company. Dicho negocio, sin embargo, dejó de existir cuando los hijos de María Hernández, que habían heredado el equipo, mercadería y otros bienes del negocio, crearon una nueva empresa al incorporar el Express Supermarket, *Inc.* en junio de 1989. A esa fecha, el deudor que María Hernández fiaba, no sólo no tenía deudas pendientes con Plaza Provision Company, sino que desapareció jurídicamente. Ya no existía ninguna relación de esta compañía con el negocio original, ni podía haberla, por lo que quedó extinguida la fianza en cuestión. Finalizada la relación obligatoria principal, finalizaba también la accesoria. Puig Brutau, *op. cit.*, pág. 613.

Del único modo que podría subsistir la obligación de fianza de María Hernández hacia Plaza Provision Company es si de algún modo ocurrió una novación de dicha obligación. Ello, sin embargo, no sucedió aquí.

Desde *Caribe Lumber Corp. v. Marrero*, 78 D.P.R. 868 (1955), y *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 390 (1973), hemos hecho claro que "la voluntad novatoria —la intención de extinguir la obligación sustituyéndola por una nueva— es ... requisito insoslayable para

la novación; no puede basarse en equívocos". Igual que la doctrina civilista, interpretando el Código Civil en lo pertinente, hemos puntualizado el elemento de la voluntad de las partes como determinante de la novación. *Warner Lambert Co. v. Tribunal Superior*, supra; Puig Brutau, *op. cit.*, 1985, T. I, Vol. 2, págs. 393–394.

En el caso ante nos, según los hechos narrados en la propia sentencia del Tribunal, no hubo comunicación alguna entre las distintas partes respecto a la sustitución de Express Supermarket, *Inc.* en la posición del negocio original. No hubo, pues, voluntad novatoria *expresa* respecto a ninguna de las obligaciones que pudieran existir. No la hubo ni siquiera *tácita*, ya que para que pueda inferirse de las circunstancias la intención de novar de las partes, es necesario que la antigua obligación y la nueva —cuando las hay— "sean de todo punto incompatibles", y, evidentemente, tal no era el caso aquí. Art. 1158 del Código Civil, 31 L.P.R.A. sec. 3242. Véase Puig Brutau, *op. cit.*, 1985, T. I, Vol. 2, pág. 393.

Como no hubo novación alguna que extendiese la fianza de María Hernández a las deudas de Express Supermarket, *Inc.*, es jurídicamente inevitable concluir que su obligación como fiadora terminó al extinguirse el negocio original. Por este fundamento estoy conforme con la sentencia que hemos dictado en el caso de autos.

Para finalizar, creo menester señalar que como María Hernández no era responsable *como fiadora* de la deuda de Express Supermarket, *Inc.*, sólo podía reclamársele alguna obligación personal de establecerse que ella y sus hijos indujeron a Plaza Provision Company a pensar razonablemente que Express Supermarket y Express Supermarket, *Inc.* eran el mismo negocio y que continuaba por ello vigente la fianza prestada por María Hernández. Ello, sin embargo, no fue alegado por los demandantes. Los recurridos hacen hincapié ante nos en que nunca fueron advertidos del cambio en la naturaleza jurídica del negocio; seña-

lan que la señora Hernández tampoco les notificó la cancelación de la fianza; advierten que la mercancía provista por Plaza Provision Company continuó despachándose a nombre del negocio original y con el mismo número de cuenta; y aducen que la recurrente se benefició de la transacción mientras que ellos no han recibido el justo pago por la mercadería que vendieron. Todo esto podría ser pertinente a una acción por daños y perjuicios, pero ello constituiría un pleito distinto al que tenemos ante nos en el caso de autos. Los recurridos no hicieron alegaciones de tal naturaleza en la acción que incoaron, en la cual se limitaron a exigir responsabilidad de María Hernández sólo como fiadora. Sobre tales bases no pueden prevalecer, por las razones expuestas antes.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Corrada Del Río.

Nos corresponde resolver si erró el extinto Tribunal Superior de Puerto Rico, Sala de Arecibo (Hon. Edna Abruña Rodríguez, Juez) al determinar que en el caso de autos la fianza solidaria otorgada por la demandada Sra. María E. Hernández no se extinguió por el sólo hecho de haberse incorporado el negocio Express Supermarket. Resolvemos que en el caso de autos se configuró la novación por cambio de deudor, extinguiéndose la fianza al no prestar el fiador su consentimiento a tal cambio. Por ende, se revoca el dictamen recurrido. Veamos.

I

El Sr. Francisco Hernández Saavedra era el propietario del negocio conocido como Express Supermarket. Con el propósito de obtener crédito de Plaza Provision Company, el 21 de julio de 1986 la Sra. María E. Hernández, su es-

posa, firmó un documento mediante el cual se constituyó en fiador y principal pagador con carácter solidario de cualquier obligación o deuda contraída o que contrajera en un futuro Express Supermarket. Se dispuso que dicha obligación permanecería vigente hasta tanto la señora Hernández notificara lo contrario por escrito y con acuse de recibo a Plaza Provision Company.

El 19 de octubre de 1986 falleció el señor Hernández Saavedra, pero el negocio continuó operando. En abril de 1989 se efectuó la liquidación de herencia en la que se adjudicó a los hijos del causante, entre otras cosas, el equipo y mercadería del negocio en marcha *Express Supermarket*. Posteriormente, en junio de 1989 se incorporó en el Departamento de Estado la corporación *Express Supermarket, Inc.* La Sra. María E. Hernández no era accionista ni dueña de dicha corporación, perteneciendo ésta a sus hijos. La muerte del señor Hernández, la liquidación de herencia e incorporación del negocio no le fue notificado a Plaza Provision Company.

Así las cosas, Plaza Provision Company continuó despachando la mercancía a nombre de Francisco Hernández Saavedra (Express Supermarket), con el mismo número de cuenta de Express Supermarket. Esa mercancía era recibida por Express Supermarket, Inc. y se pagaba con cheques timbrados por dicha corporación.

El 20 de mayo de 1991 Express Supermarket, Inc. se acogió a la protección de la Ley de Quiebras bajo el Capítulo 7. Según estipulado por las partes, el 2 de julio de 1991 Plaza Provision Company, y su cesionaria, Cámara de Comerciantes Mayoristas de Puerto Rico, Inc., presentaron su reclamo como acreedores de Express Supermarket, Inc. bajo el número 00032, caso número 91–03597.

Así las cosas, el 9 de agosto de 1991 la Cámara de Comerciantes Mayoristas de Puerto Rico, Inc. presentó una demanda en cobro de dinero contra la Sra. María E. Hernández reclamando la cantidad de treinta y un mil cuatro-

cientos dieciocho dólares con treinta y cuatro centavos ($31,418.34) por mercancía *vendida a Express Supermarket, Inc.* durante los meses de marzo y abril de 1991. Se alegó en la demanda que la Sra. María E. Hernández debía responder como codeudora de la mencionada deuda. La señora Hernández contestó la demanda negando ser codeudora de la alegada deuda y presentó como defensa afirmativa no tener vínculo alguno con Express Supermarket, Inc.

El 15 de marzo de 1993 se celebró una vista en la que las partes acordaron someter una estipulación de hechos y memorandos de derecho. Las partes sometieron sus escritos y el 11 de agosto de 1993 el tribunal de instancia dictó una sentencia parcial en la que concluyó que no se configuró una novación por cambio de deudor puesto que el acreedor no prestó su consentimiento; que la aceptación de pagos hechos por el alegado nuevo deudor no es el modo cierto y positivo del cual se pueda derivar el propósito deliberado por parte del acreedor de aceptar al nuevo deudor, ya que el pago de una deuda puede hacerlo cualquier persona; que la demandada Sra. María E. Hernández no notificó por escrito con acuse de recibo la cancelación de la fianza para el negocio conocido como Express Supermarket. Finalmente el tribunal de instancia concluyó que la fianza solidaria otorgada por la demandada, Sra. María E. Hernández, no se extinguió por el sólo hecho de haberse incorporado el negocio conocido como Express Supermarket. Oportunamente, la parte demandada solicitó la reconsideración de la sentencia parcial, la cual fue declarada no ha lugar.

No conforme, acude ante nos la parte demandada, Sra. María E. Hernández, y solicita la revocación de la sentencia parcial recurrida.([1]) Aduce como único señalamiento de error lo siguiente:

---

([1]) Acude ante nos mediante una solicitud de revisión, mas el recurso apropiado es una petición de *certiorari* por no tratarse de un dictamen final.

Erró el Honorable Tribunal al determinar que el documento de fianza firmado a favor de Express Supermarket por la demandada recurrente era extensiva a Express Supermarket, Inc., y que dicha garantía no se había extinguido luego de haberse incorporado el negocio Express Supermarket. Solicitud de revisión, pág. 6.

Mediante Resolución de 18 de noviembre de 1993 expedimos el recurso. Con el beneficio de la comparecencia de las partes, resolvemos.

## II

En primer lugar debemos aclarar que las obligaciones no se extinguen por la muerte, sino que se transmiten a los herederos del finado en virtud de lo dispuesto en el Art. 599 del Código Civil, 31 L.P.R.A. sec. 2081. Por otro lado, el Art. 1110 del Código Civil, 31 L.P.R.A. sec. 3151, expresamente provee bajo qué circunstancias se extinguen las obligaciones, no siendo una de ellas la muerte del deudor, por lo que subsistiendo la obligación, también subsiste la fianza.

Sobre el particular nos señala Scaevola que:

... cuando haya novación quedará liberada la fianza, porque se afianzó aquella obligación determinada y no otra; pero aun cuando no haya propiamente novación, quedará liberada también si hubo cambio en el deudor, porque afianzó a aquel deudor y no a otro.

Claro es que *en caso de transmisión de obligaciones causada por herencia el deudor será personalmente otro; pero esto es inevitable, natural, y, por consiguiente, el fiador permanece obligado por la nueva persona del deudor.*(²) (Énfasis suplido.)

Por otro lado, nos señala M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1980, T. XVI, Vol. 1, págs. 590–591, con relación al Art. 1.205 del Código Civil español, equivalente al Art. 1159 de

---

(²) Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. XXVIII, pág. 675.

nuestro Código Civil, 31 L.P.R.A. sec. 3243, el cual regula la novación por cambio de deudor, que:

El heredero asume la condición de "parte" en cada una de las relaciones jurídicas del causante, como si fuere la misma persona, y tiene, por tanto, *los mismos derechos y obligaciones, expectativas y facultades y poderes* que habían nacido de la relación en beneficio o en contra del titular originario ....

A base de lo anterior, la sucesión, *a la cual pertenecía la fiadora solidaria*, continuó la operación del negocio, por lo que continuó la relación comercial con Plaza Provision Company, suministrándole esta última mercancía para su negocio. Finalmente el negocio fue adjudicado a los hijos mediante la correspondiente partición de herencia. Posteriormente, el negocio fue incorporado.([3]) Aclarado lo anterior, pasaremos a discutir los méritos del caso. Veamos.

El primer párrafo del Art. 1721 del Código Civil, 31 L.P.R.A. sec. 4871, expresa que "[p]or la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste". Nos señala Puig Brutau que "[l]a fianza implica la existencia de una obligación principal y de una obligación accesoria pactada para asegurar el cumplimiento de la primera. La obligación principal es la que existe entre acreedor y deudor. Este deudor es el 'otro' ... por el cumplimiento de cuya obligación el fiador se ha obligado hacia el acreedor. La fianza aparece así como una obligación convenida entre acreedor y fiador para asegurar o garantizar el pago o cumplimiento de una obligación debida por 'un tercero' ...". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, págs. 587–588.

---

([3]) El Art. 1065 del Código Civil, 31 L.P.R.A. sec. 3029 dispone que "[t]odos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario". Claro está, los derechos personalísimos no son transmisibles. De ahí que los derechos adquiridos en virtud de la relación comercial entre el causante y Plaza Provision Company fue transmitida a sus hijos al efectuarse la partición de herencia, prestando su consentimiento para ello la fiadora. Por ende, subsistió la relación contractual.

En el caso de autos no existe controversia en cuanto a que la fianza es solidaria, por haberlo dispuesto así las partes. Tampoco existe controversia en cuanto a que estamos ante la figura de una fianza como garantía de deudas futuras, autorizada por el Art. 1724 del Código Civil, 31 L.P.R.A. sec. 4874, el cual provee que "[p]uede también prestarse fianza en garantía de deudas futuras, cuyo importe no sea aún conocido; pero no se podrá reclamar contra el fiador hasta que la deuda sea líquida".

La extinción de las fianzas se encuentra regulada por los Arts. 1746–1752 del Código Civil, 31 L.P.R.A. secs. 4951–4957. Así, pues, se extingue la fianza, entre otras cosas, por aceptación de bienes por el acreedor en pago de la deuda (Art. 1748 (31 L.P.R.A. sec. 4953)); por la prórroga concedida al deudor por el acreedor sin el consentimiento del fiador (Art. 1750 (31 L.P.R.A. sec. 4955)), y más importante aún, por ser la disposición aplicable al caso de autos, "[l]a obligación del fiador se extingue al mismo tiempo que la del deudor, y por las mismas causas que las demás obligaciones" (Art. 1746 (31 L.P.R.A. sec. 4951)).

Esta última disposición nos obliga a referirnos al articulado del Código Civil que regula la *extinción de las obligaciones*, Arts. 1110–1167 (31 L.P.R.A. secs. 3151–3251). En específico, el Art. 1110 del Código Civil, *supra*, dispone que:

Las obligaciones se extinguen:
Por el pago o cumplimiento.
Por la pérdida de la cosa debida.
Por la condonación de la deuda.
Por la confusión de los derechos de acreedor y deudor.
Por la compensación.
Por la novación. 31 L.P.R.A. sec. 3151.

En el presente caso resulta aplicable la *extinción por la novación de la obligación*, la cual en específico se encuentra regulada por los Arts. 1157 a 1167 del Código Civil, 31 L.P.R.A. secs. 3241–3251. En particular, el Art. 1157 (31 L.P.R.A. sec. 3241), provee que:

Las obligaciones pueden modificarse:
(1) Variando su objeto o sus condiciones principales.
(2) Sustituyendo la persona del deudor.
(3) Subrogando a un tercero en los derechos del acreedor.

En el caso de autos nos encontramos con la novación por cambio de deudor, contemplada en el inciso (2) del transcrito Art. 1157, *supra*. Sobre dicha clase de novación dispone el Art. 1159 del Código Civil, *supra*, que "[l]a novación, que consiste en sustituirse un nuevo deudor en lugar del primitivo, puede hacerse sin conocimiento de éste, pero no sin el consentimiento del acreedor". Por lo tanto, para determinar si realmente hubo tal novación por cambio de deudor, debemos analizar si medió el consentimiento del acreedor para tal cambio. Veamos.

En primer lugar, debemos tener presente que el hecho de que Plaza Provision Company haya aceptado pagos efectuados por la corporación Express Supermarket, Inc., no puede interpretarse como que la primera dio su consentimiento a un cambio de deudor, puesto que el primer párrafo del Art. 1112 del Código Civil, 31 L.P.R.A. sec. 3162, provee que "[p]uede hacer el pago cualquier persona, tenga o no interés en el cumplimiento de la obligación, ya lo conozca y lo apruebe, o ya lo ignore el deudor". En *Teachers Annuity v. Soc. de Gananciales*, 115 D.P.R. 277, 291 (1984), resolvimos que "[e]l pago hecho, pues, por un tercero tiene plena eficacia. Más aún, el acreedor no puede impedirlo, Manresa, *op. cit.*, pág. 601.([4]) Siendo ello así, la aceptación del pago verificado por [un tercero] puede ser interpretada con otra voluntad que no necesariamente es la de consentir, sino meramente aceptar el pago de un tercero". De lo anterior se deduce que en el caso de autos definitivamente no puede ser interpretado como un consentimiento el hecho de que Plaza Provision Company haya aceptado pagos efectuados por Express Supermarket, Inc.

---

([4]) J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 1.

Aclarado lo anterior, pasemos a analizar si equivale a un consentimiento para cambio de deudor el hecho de que Plaza Provision Company y la Cámara de Comerciantes Mayoristas de Puerto Rico, su cesionaria, aquí la parte demandante recurrida, hayan presentado en la Corte de Quiebras su reclamo como *acreedores de Express Supermarket, Inc.*([5])

En *Teachers Annuity v. Soc. de Gananciales*, supra, pág. 282, resolvimos que el consentimiento del acreedor para cambio de deudor, requerido por el Art. 1159 del Código Civil, *supra*, debe constar en forma patente y manifiesta; no puede ser objeto de suposiciones ni de presunciones puesto que su efecto jurídico es radical, extingue la deuda y desliga al deudor primitivo de toda obligación con el acreedor y crea un nuevo vínculo de obligación con el deudor sustituto; tal consentimiento debe constar de modo cierto y positivo.

En España, al interpretar el Art. 1205 del Código Civil español, equivalente a nuestro Art. 1159, *supra*, se ha resuelto que el acreedor puede prestar su consentimiento en cualquier momento y forma. S. de 22 de febrero de 1946, Núm. 60, Jurisprudencia Civil, XIII Rev. Gen. Leg. Jur. 547. Asimismo, se ha resuelto que el consentimiento del acreedor a la sustitución de un primer deudor va implícito en el hecho de *reclamar el pago al nuevo deudor*, que ya había pagado parte de la obligación. S. de 11 de enero de 1949, Núm. 6, III Jurisprudencia Civil, XXV Rev. Gen. Leg. Jur. 113, y S. de 16 de noviembre de 1981, Núm. 4511, XLVIII (Vol. II) Repertorio de Jurisprudencia 3602. Véase, además, Albaladejo, *op. cit.*, pág. 576 *et seq.*

Ciertamente ello equivale a un consentimiento que consta en forma patente y manifiesta, que no da lugar a otra conclusión que no sea que el acreedor prestó su consentimiento a un cambio de deudor. Dicha conclusión no se

---

([5]) Véase la estipulación de hechos número 16, acordada por ambas partes ante el tribunal de instancia.

basa en suposiciones ni presunciones, puesto que se deriva el consentimiento de modo cierto y positivo. Obsérvese, además, que en las alegaciones de la demandada la parte demandante indica expresamente *que las mercancías fueron vendidas a Express Supermarket, Inc.*

Habiéndose determinado que se configuró la novación por cambio de deudor, por haber mediado el consentimiento del acreedor, analicemos qué efectos tiene ello sobre la figura de la fianza. Veamos.

En España, el efecto que se le ha conferido a tal clase de novación sobre la figura de la fianza es el de extinguir esta última en los casos en los que no ha mediado el consentimiento del fiador para el cambio de deudor. Sobre el particular, Albaladejo, *op. cit.*, pág. 290, razona que "si ... la fianza se presta tomando en consideración las circunstancias personales y patrimoniales del deudor afianzado, la sustitución de éste por otro, que conforme al artículo 1.205(6) no puede hacerse sin el consentimiento del acreedor, implica una alteración sustancial que, con independencia de modificar o no objetivamente la obligación, da lugar a la extinción de la fianza. Si el fiador otorga su consentimiento a la novación subjetiva ... quedará vinculado, no obstante, el cambio de deudor".(7) Asimismo nos señala Scaevola sobre los efectos de la novación, que:

> Es el primero de ellos la extinción de la obligación preexistente, y, por consiguiente, la del contrato accesorio de fianza, a menos, claro está, que el fiador consienta en serlo de la nueva, surgiendo entonces, ... una fianza nueva.
>
> Se comprende que sea así en el caso de sustitución del deudor, porque el fiador lo es de un deudor determinado, en cuya solvencia, honorabilidad y amistad confió; pero no de otro advenedizo o no consentido al efecto por el fiador.
>
> En suma, que cuando haya novación quedará liberada la fianza, porque se afianzó aquella obligación determinada y no

---

(6) Equivalente al Art. 1159 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3243.

(7) (Escolio omitido.)

otra; pero aún cuando no haya propiamente novación, quedará liberada también si hubo cambio en el deudor, porque afianzó a aquel deudor y no a otro.[8]

Asimismo dicho tratadista nos señala que

las obligaciones accesorias, con las que el Código se refiere principalmente a las que garantizan la primitiva obligación, como la fianza y la prenda, se constituyen en consideración a los términos de un compromiso determinado, o a la persona del deudor, o bien a la del propio acreedor. De cualquiera manera que estos términos o personas se modifiquen, no puede suponerse el pensamiento de atribuir a la segunda obligación la misma confianza o el mismo apoyo que se prestaba a la primera, y las obligaciones accesorias deben, por consecuencia, desaparecer. Para que sucediera no contrario, se necesitaría que consintieran en ello las personas responsables de tales obligaciones, y en este caso habría también una novación del compromiso accesorio, un nuevo convenio que modificaría el subsistente hasta entonces y que tendría fuerza y valor por el nuevo consentimiento prestado.[9]

En el caso de autos no hay controversia en torno a que el fiador no consintió en serlo del nuevo deudor, por lo que la fianza quedó extinguida al operar la novación por cambio de deudor.

La conclusión a la que aquí llegamos resulta cónsona con lo dispuesto en el primer párrafo del Art. 1726 del Código Civil, 31 L.P.R.A. sec. 4876, el cual provee que "[l]a fianza no se presume; debe ser expresa y no puede extenderse a más de lo contenido en ella". Sobre el particular, Albaladejo, *op. cit.*, T. XXIII, pág. 101, nos señala que

[l]imitado, pues, el carácter expreso del consentimiento respecto de la manifestación de voluntad de fiador de asumir la fianza, debe exigirse, además, que en cada caso concreto se enuncien de forma también expresa todos los elementos recesarios para precisar el contenido de aquella manifestación de voluntad, de suerte, que *aparezca claramente determinada la per-*

---

[8] Scaevola, *op. cit.*, pág. 675.

[9] Scaevola, *op. cit.*, 1957, T. XIX, pág. 1111.

*sona a quien se garantiza*, la obligación que se afianza y los límites de la misma, sin perjuicio de lo que después se aclara en relación con una posible validez de cierta indeterminación en tales elementos siempre que concurran datos suficientes para que se operen las necesarias concreciones. (Escolio omitido y énfasis suplido.)

Añade, además, que "[a]hora bien, esta posibilidad de la inicial indeterminación del afianzamiento y su determinabilidad posterior, debe armonizarse con el principio visto de su carácter expreso y con el que proclama su interpretación restrictiva en beneficio del fiador". (Escolio omitido.) Albaladejo, *op. cit.*, T. XXIII, pág. 105.

De ahí que constando en el contrato de fianza que el deudor era el negocio conocido como Express Supermarket, ésta no puede ser extendida al nuevo deudor Express Supermarket, Inc. Claro está, distinto sería si el fiador hubiese dado su consentimiento al cambio de deudor, puesto que de esa manera se habría modificado el contrato de fianza. No obstante, esta última no es la situación en el caso de autos.

Por los fundamentos antes expuestos, resolvemos que procede revocar la sentencia parcial recurrida y desestimar la demanda incoada contra la fiadora solidaria María E. Hernández.