CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, demandante y recurrida, *v.* F. SANTIAGO LAVANDERO *y* RAMÓN COBIÁN CHINEA, demandados y recurrentes.

Número: 12365. Resuelto: 29 de septiembre de 1961.

*Rodríguez Ema & Rodríguez Ramón* y *Antonio José Amadeo,* abogados de la recurrida; *Mariano Acosta Velarde, Daniel Pellón Lafuente,* abogados de los recurrentes; *P. J. Santiago Lavandero,* abogado del recurrente F. Santiago Lavandero.

Sala integrada por el Juez Asociado Señor Hernández Matos, como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Para el mes de marzo de 1950 la corporación doméstica Sucrs. de Lavandero, Inc. se encontraba adeudando a varias firmas comerciales de esta plaza la suma de $22,232.82. En vista de que su situación económica no le permitía satisfacer a su vencimiento las obligaciones contraídas, Frank Santiago Lavandero, Presidente de dicha corporación, se dirigió al ajustador de la Cámara Insular de Comerciantes Mayoristas, y propuso un plan para el pago de las deudas mencionadas. Al efecto indicó que estaba en disposición de satisfacer el importe total de las mismas *"por conducto de esa entidad"* mediante el pago de plazos mensuales no menores de quinientos dólares, y garantizar el pago mediante la constitución de una hipoteca sobre el equipo y mobiliario del negocio. Sugirió además que "los gastos y derechos de la Cámara Insular de Comerciantes Mayoristas serán por cuenta nuestra [de la corporación] a fin de que ustedes [los acreedores] cobren su dinero completo". Esta proporción fue aceptada, y en 18 de julio siguiente se otorgó por la corporación un pagaré a favor de la Cámara y se constituyó una hipoteca de bienes muebles que fue debidamente inscrita en el Registro de la Propiedad de Bayamón.

En 9 de febrero de 1951, se canceló por la Cámara el pagaré expedido por la corporación, así como la hipoteca constituida como ha quedado expuesto, por haber recibido el pago total de la indicada cantidad "mediante otras garantías que en el día de hoy han sustituido la presente obligación". En esta forma la corporación pudo disponer libremente de los bienes hipotecados. Es preciso acotar que Santiago Lavandero logró la cancelación a que se ha hecho referencia mediante una proposición de que se redujera el balance insoluto de la obligación de la corporación a solamente un setenta por ciento del principal adeudado, de cuya cantidad satisfizo parte en

efectivo, y para el remanente se expidió y entregó a la Cámara una obligación por la suma de $7,239.64, (¹) que fue firmada por el codemandado Ramón Cobián Chinea como fiador solidario.

Santiago Lavandero hizo cuatro abonos mensuales al pagaré, ascendentes en total a $1,608.80, pero como dejó de satisfacer dos o más plazos de la obligación, la Cámara recurrió a la vía judicial para gestionar el cobro del remanente de $5,630.84, por así autorizarlo expresamente una cláusula de vencimiento anticipado que se había incorporado como una de las condiciones del pagaré. En la contestación formulada, los demandados Santiago y Cobián admitieron expresamente el

---

[1] La referida obligación, copiada a la letra, lee como sigue:

"(PAGARE)

"Por $7,239.64                                    Vence:   Todos los meses

"DEBEMOS Y PAGAREMOS solidariamente a la CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, o a su orden, en su domicilio en San Juan, Puerto Rico, la suma de SIETE MIL DOSCIENTOS TREINTA Y NUEVE DÓLARES CON SESENTA Y CUATRO CENTAVOS ($7,239.64), valor recibido a nuestra entera satisfacción y contento.

"El principal de esta obligación nos obligamos solidariamente a pagarlo en la oficina principal de la CÁMARA INSULAR DE COMERCIANTES MAYORISTAS, en San Juan, Puerto Rico, o en cualquier otro sitio que el tenedor de este pagaré designe, por escrito, en plazos mensuales de CUATROCIENTOS DOS DÓLARES CON VEINTE CENTAVOS ($402.20), empezando el día último del mes de febrero de mil novecientos cincuenta y uno y así sucesivamente el día último de cada mes subsiguiente siendo el último plazo el día último del mes de julio de mil novecientos cincuenta y dos, cuyo último plazo será de CUATROCIENTOS DOS DÓLARES CON VEINTICUATRO CENTAVOS ($402.24).

"Se conviene expresamente que la falta de pago a su vencimiento de dos de los plazos anteriormente indicados, dará lugar al vencimiento de esta obligación y el dueño o endosatario de este pagaré, por ese solo motivo y sin necesidad de requerimiento o notificación, quedará en libertad de exigir el pago inmediato del principal de esta obligación o de la parte de dicho principal que aún estuviere pendiente de pago, y además intereses sobre la suma total adeudada desde la fecha de dicho vencimiento y hasta la de su total pago, al tipo del cinco por ciento (5%) anual.

"Renunciamos al derecho de presentación para pago, protesto, aviso de no pago y protesto y consentimos en que el plazo para el pago pueda ser extendido, sin aviso de la prórroga, a opción del acreedor, y en caso de ser necesaria la reclamación judicial, nos sometemos a la competencia de los tribunales insulares de la ciudad de San Juan, Puerto Rico, con jurisdicción en el asunto, ya por razón de

otorgamiento y entrega del pagaré, alegaron varias defensas que en realidad se dirigen a impugnar la capacidad de la entidad demandante para instar la demanda, (²) y el demandado Santiago presentó una reconvención en reclamación de la suma de $11,108.80 que había satisfecho a la Cámara en ocasión de la sustitución de deudor acordada según se ha expuesto y por los abonos efectuados al pagaré cuyo cobro se intenta.

Contra la sentencia que declaró con lugar la demanda se interpuso recurso de apelación. Todos los errores señalados giran alrededor de la capacidad de la asociación demandante para demandar, para obligarse y para ser cesionaria de los créditos de sus asociados y gestionar su cobro.

1. Hace apenas unos días consideramos un planteamiento similar en cuanto a la impugnación de la entidad Cámara Insular de Comerciantes Mayoristas para ser cesionaria de las

---

la cuantía y/o de la materia de la acción y nos obligamos al pago de la suma de QUINIENTOS DÓLARES ($500.00) para las costas, gastos y honorarios de abogados de que se valga el tenedor de este pagaré en su reclamación, aún cuando los procedimientos sean seguidos en rebeldía nuestra.

"San Juan, Puerto Rico, a 9 de febrero de 1951.

Firmado: F. SANTIAGO LAVANDERO
Firmado: RAMÓN COBIÁN CHINEA

"Affidavit Núm. 1887.

"Suscrito y reconocido ante mí por don Francisco Santiago Lavandero y don Ramón Cobián Chinea, mayores de edad, casados, propietarios y vecinos de Bayamón, Puerto Rico, y a quienes doy fe de conocer personalmente, en San Juan, Puerto Rico, hoy día 9 de febrero de 1951.

Firmado: L. Ríos ALEGRÍA
Notario Público"

² Se alegó que como la Cámara Insular de Comerciantes Mayoristas se organizó como una asociación sin fines pecuniarios no tenía capacidad para demandar ni para comparecer a nombre de los asociados; que aunque las cláusulas de incorporación permitieran tal gestión con carácter representativo, ello es contrario a la ley; que la asociación demandante no puede constituirse en cesionaria de créditos ni gestionar su cobro; que no es la parte realmente interesada y que está impedida de proseguir la acción por proceder el pagaré "de transacciones ultra-vires" y de "negociaciones y transacciones en exceso y fuera de [sus] facultades estatutorias [sic]". Se negó además que los demandados hubieran recibido valor alguno a cambio de la obligación, y que existiera "causa o consideración" para el otorgamiento del pagaré; y se afirmó finalmente que la expresión "valor recibido a nuestra entera satisfacción y contento" que aparece en el texto del documento es falsa, ineficaz, simulada e inexistente.

acreencias de sus asociados y gestionar el cobro judicial de las mismas. Rechazamos la posición del deudor, que es idéntica a la que sustentan los demandados apelantes. Después de examinar las disposiciones legales aplicables y las del reglamento de dicha institución, que sería prolijo repetir, indicamos en *Cámara Insular Etc.* v. *Anadón* 83 D.P.R. 374 (1961), que la demandante tenía facultades para adquirir los créditos de sus asociados, aún cuando en la cesión no mediara causa y hasta conservando los cedentes ciertos derechos en cualquier cantidad que se recobrara. Añadimos que el deudor no está en condiciones de combatir la cesión verificada, ya que ésta no crea nuevas obligaciones para él. En el presente caso la situación es todavía más escabrosa para la parte demandada pues no puede impugnar personalmente la cesión original de créditos contra la corporación hecha por los asociados a favor de la Cámara, y, además, como cuestión de realidad, la deudora original Sucrs. de Lavandero, Inc. fue relevada del pago de los mismos ([3]) y consintió a la novación de la obligación, convalidándola así, pues tal consentimiento expresa el propósito de no utilizar la acción de nulidad. Manresa, *Comentarios al Código Civil Español* (4 Ed., 1929) tomo VIII, págs. 398-9.

2. Tratándose de un pagaré otorgado por los demandados a favor de la demandante no pueden escudarse en la falta de capacidad de la entidad acreedora para evadir el pago de

---

[3] El tribunal de instancia concluyó—con suficiente apoyo en la evidencia—que la corporación recibió "un relevo de sus deudas con las firmas que habían cedido, para su cobro, sus créditos a la demandante. Tal hecho surge claramente de la propia planilla que radicara la corporación en la Corte de Quiebras, en la cual no incluyó entre sus acreedores a dichas firmas". En el alegato presentado por la parte apelante frecuentemente se reitera que la corporación no ha sido relevada por los acreedores originales, fundándose en que todavía aparece la cuenta en los libros de algunos de ellos. Este hecho no tiene la significación que se le atribuye y probablemente responde a funciones de contabilidad con el propósito de deducir, como deuda incobrable el balance impagado que finalmente resulte después que la Cámara agote las gestiones de cobro que realiza como cesionaria. No se demostró que se haya iniciado acción de cobro individualmente por algún acreedor, o que se hayan hecho gestiones extrajudiciales.

la obligación que no sólo asumieron voluntariamente, sino que surgió al tráfico jurídico como consecuencia de sugestiones del mismo deudor principal. *B. Fernández Hnos., Sucrs.* v. *Ortega,* 51 D.P.R. 443 (1937); *Sucrs. de Canals Hnos. Co.* v. *Sucn. Quiñones,* 46 D.P.R. 529, 536 (1934); *Schluter & Co., Sucrs.* v. *Hernández,* 36 D.P.R. 64 (1926). Una situación similar se consideró en *Spokane Merchant's Association* v. *Olmstead,* 327 P.2d 385 (Idaho 1958). En dicho caso varios acreedores de los esposos Olmstead cedieron sus créditos a la asociación demandante, que era una organización de comerciantes de la localidad; los deudores cedieron su activo en un negocio a favor de la demandante, para beneficio de los acreedores; se resolvió que este reconocimiento hecho por la esposa le impedía impugnar luego la existencia y capacidad de la entidad demandante. Véase especialmente, *Royal Bank of Canada* v. *Iglesias,* 46 D.P.R. 162 (1934); véase además, *Kelly* v. *Kosuga,* 358 U.S. 516 (1959). Sobre el impedimento del demandado de alegar la falta de capacidad de la demandante, véase, *Centro de Dependientes* v. *Montalvo,* 72 D.P.R. 408, 411 (1951). Además, la actuación del demandado Santiago al radicar una reconvención contra la Cámara por dineros pagados a ésta le impide negar la capacidad de la demandante. *Flash Cleaners, Inc.* v. *Columbia Appliance Corp.,* 319 P.2d 454 (Cal. 1957); *Brandtjen & Kluge* v. *Biggs,* 288 P.2d 1025 (Ore. 1955); *Bell* v. *Commercial Investment Trust* Co., 246 Pac.1102 (Okla. 1926).

■■■ 3. Carece de méritos la alegación de que para el otorgamiento del pagaré objeto de la presente acción no medió causa alguna, porque los obligados no recibieron dinero o bienes del acreedor a cambio de la misma. En este caso nos encontramos frente a un ejemplo de novación subjetiva por cambio de deudor, o sea, la sustitución de una obligación por otra posterior que extinguió la primera, realizada mediante el cambio de la parte obligada, con el consentimiento expreso del acreedor. Sobre la necesidad de consentimiento del acreedor,

véanse, *Ríos Ovalle* v. *Rosaly*, 50 D.P.R. 682 (1936); *Bou* v. *Colorado*, 24 D.P.R. 135 (1916). Más específicamente se trata del supuesto de la delegación, esto es, cuando el deudor (la corporación) ofrece y el acreedor acepta a un tercero (Santiago y Cobián) que consiente en la sustitución, en contraste con la modalidad de la expromisión que opera cuando el cambio de deudor obedece a la intervención espontánea de un nuevo deudor que ocupa el lugar del deudor original, sin su consentimiento, pero con el del acreedor. Artículo 1157 del Código Civil (31 L.P.R.A. sec. 3241); Puig Peña, *Tratado de Derecho Civil Español* (1951), tomo IV, vol. I, pág. 350; Castán, *Derecho Civil Español, Común y Foral*, 8a ed., (1954), tomo 3, pág. 318; Manresa, *Comentarios al Código Civil Español* (4 ed., 1929) tomo VIII, pág. 392; Velázquez, *Obligagaciones y Contratos según la Legislación y la Jurisprudencia Puertorriqueña*, (Universidad de Puerto Rico, mimeógrafo, 1939), págs. 265, 269–274; De Cossio, *La Transmisión Pasiva de las Obligaciones, a Título Singular*, Anales de la Academia Matritense del Notariado (1943), vol. 1, págs. 187-206. Respecto a la causa de la nueva obligación del delegado (los demandados) a favor del delegatario (Cámara Insular de Comerciantes Mayoristas), dice el Profesor Velázquez, a la página 273:

"La obligación que asume el delegado hacia el delegatario tiene su causa, no en las relaciones personales surgidas entre éstos, sino en las relaciones que unen al delegado con el delegante. El delegado se obliga frente al delegatario con miras de hacer una donación, un préstamo o un pago al delegante. El delegatario puede ignorar aun el fin perseguido por el delegado. Así, en sus relaciones con el delegatario, la obligación asumida por el delegado está separada de su causa. Es una obligación abstracta."

█ Por otro lado, hemos resuelto que cuando se suscribe un pagaré en sustitución de otras obligaciones anteriores, el hecho de que no se recibiera dinero o bienes del acreedor por virtud de la obligación así suscrita no obsta para que dicho pa-

garé tenga causa. *National City Bank* v. *Llonín*, 41 D.P.R. 163 (1930) ; *Roig Commercial Bank* v. *Valladares*, 38 D.P.R. 439 (1928) ; *Banco Comercial* v. *Arguinzonis*, 35 D.P.R. 284 (1926).

4. No es necesario que discutamos otras cuestiones colaterales que se plantean en el elaborado alegato de los apelantes, pues en fin de cuentas, todas se relacionan con las que ya hemos considerado. En relación con los servicios legales que alegadamente presta la Cámara Insular de Comerciantes Mayoristas a sus asociados, véase, *The Unauthorized Practice of Law by Lay Organization Providing the Services of Attorneys*, 72 Harv. L. Rev. 1334 (1959). Es innegable que el demandado Santiago obtuvo un beneficio personal al cancelarse por la Cámara la hipoteca que había constituido la corporación Sucrs. de Lavandero, Inc. Este hecho le permitió vender en condiciones más ventajosas las acciones que poseía en dicha corporación para dedicarse, según su testimonio, a actividades más lucrativas. Además, si adoptáramos la solución que propone, estaríamos en efecto perjudicando a personas que confiaron en las representaciones que se les hicieran, y que les privaron de proceder por otra vía al cobro de lo que legítimamente se les adeudaba. Aunque no fue éste propósito deliberado de los actos de Santiago, tal sería el resultado.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 4 de abril de 1957.*